IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| CHERYL PENNER, *Individually*, as *Representative of the* ESTATE OF BRIAN GANDY, and *a/n/f for* KG, LG, RG and ZG, *minor children*; and MEGAN GANDY<br><br>v.<br><br>GAINES COUNTY, TEXAS; JEFFERY JAMES, *Individually*; CALVIN SELLERS, *Individually*; JOHN/JANE DOE #1, *Individually*; and JOHN/JANE DOE #2, *Individually* | § § § § § § § § § § § § § §<br><br>CIVIL ACTION NO. 5:23-cv-00010<br>JURY |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:**

**NOW COME** Plaintiffs, Cheryl Penner, *Individually,* as *Representative of the* Estate of Brian Gandy, and a/n/f for KG, LG, RG and ZG, *minor children*, and Megan Gandy, bringing this their *Plaintiffs' Original Complaint*, praying for damages against Gaines County, Texas, Jeffery James, Calvin Sellers, and others, who jointly and/or severally denied Brian Gandy his rights guaranteed by the Constitution and laws of the United States of America and/or the State of Texas, and showing unto this Court as follows:

## I.
## JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(3) (civil rights).

## II.
## PARTIES

2.     Plaintiff Cheryl Penner (hereinafter occasionally referred to as "Penner") is an individual resident of the State of Texas and the mother of Brian Gandy (hereinafter "Brian"). Penner brings this suit on her own behalf, as representative of the Estate of Brian Gandy and as the legal representative for Brian's four minor children (KG, LG, RG and ZG).

3.     Plaintiff Megan Gandy (hereinafter occasionally referred to as "Gandy") is an individual resident of the State of Texas and the wife of Brian. Gandy brings this suit on her own behalf.

4.     Defendant Gaines County, Texas (hereinafter "Gaines County" or "County") is a political subdivision of the State of Texas and can be served with summons upon Gaines County Judge Tom Keyes, 101 South Main Street, Room 201, Seminole, Texas 79360.

5.     Defendant Jeffery James (hereinafter "JP James") was the elected Gaines County Justice of the Peace for Precinct 1 at the time of Brian's death and can be served with summons at 608 SW 17th St., Seminole, Texas 79360.

6.     Defendant Calvin Sellers (hereinafter "JP Sellers") was the elected Gaines County Justice of the Peace for Precinct 2 at the time of Brian's death and can be served with summons at 101 S. Main St., Room 100, Seminole, Texas 79360.

7.     Defendant Does, once identified by name during discovery, will be supplemented. Defendant Does ware employed by and/or agents of the Gaines County Sheriff's Department (hereinafter "GCSD").  Each and every act complained of herein arose from the conduct of each Defendant Doe while acting under color of state law, and was committed within their employment with the GCSD and were directly responsible for the deficient and/or nonexistent suicide checks and/or removal from same made the basis of this suit.

## III.
## FACTS

8.     Whenever it is alleged in this complaint that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the normal and routine course and scope of employment of Defendant and/or Defendant's officers, agents, servants, employees or representatives.

9.     On April 19, 2021, Brian was arrested on a warrant associated with a "motion to revoke" his community supervision concerning a possession of controlled substance charge and taken to the Gaines County Jail (hereinafter "GCJ" or "Jail") and placed into the custody of the GCSD.

10.    Upon arrival at the Jail, Brian was, pursuant to information provide to personal at the Jail and/or as required by state law, screened for possible concerns with medical problems and/or risk of suicide.  As a result of such screening, the following concerns, *inter alia*, were noted:

- that Brian had used various drugs (including, but not limited to, the highly potent and addictive drugs Fentanyl and Methadone) that very day;
- that Brian was experiencing seizures and very "bad" withdrawal symptoms;
- that Brian had called MHMR himself and attempted suicide earlier that same day;
- that Brian was very depressed, worried, experiencing nightmares, flashbacks and extreme concerns with his employment, his spouse and his children; and
- that Brian was "at risk for suicide" based on same.

11.    As a result of such concerns with Brian mental status, as well as the obvious physical problems he was experiencing, Brian was taken to, treated at and released from the local hospital, with instructions for Brian to be seen by Dr. Michael Watson (hereinafter "Dr. Watson") at the Jail the following day. Allegedly, Brian was placed on a "suicide watch" upon his return from the

hospital. Plaintiffs assert that such "watches," *if actually attempted*, were insufficient and in violation of the appropriate standards promulgated by the Texas Commission on Jail Standards (hereinafter "TCJS").

12.     The next day, April 20, 2021, Brian was treated at the Jail by Dr. Michael Watson (hereinafter "Dr. Watson"). As a result of Brian still shaking uncontrollably and seizing due to his withdrawals (from a large daily-amount of Fentanyl and Xanax) and mental condition, Dr. Watson prescribed Brian various medications, including Valium and Diazepam, to be provided by the GCSD personnel. None of these necessary and prescribed medication were even "offered" to (and even then, not actually "accepted" by) Brian until – at best – yet another 24 hours later on April 21, 2021, and without any further intervention, concern and/or treatment regarding same. In particular, and based on the records secured, Plaintiffs allege that Brian refused his belatedly-provided medications and that such refusal is yet another obvious reason for monitoring, reassessing and/or protecting Brian.

13.     On that same day, an additional charge of Aggravated Assault with a Deadly Weapon was made against Brian and the GCSD (by and through its personnel, including the Doe Defendants) had already removed Brian from his "suicide watch" without any re-assessment, without any notice to Dr. Watson and/or based on nothing more than an alleged determination by a "JP Judge" (without any training, knowledge and/or authority over the GCJ and/or GCSD)[1] that Brian could be so removed based on nothing more than an unadorned and meritless whim, unaccompanied by any "re-assessment" or otherwise.

14.     On April 21, 2021, and apart from concerns with the manner and method of the prior days'

---

[1] Plaintiffs would point out that in this case, there are two Justice of the Peace judges potentially involved – JP James and JP Sellers.  Because Plaintiff is not aware of which of the two are alleged (whether true or not) by County to have "removed" Brian from any suicide watch/checks, both are included in this suit.

4

"checks" or lack thereof, any alleged "well-being checks" were conducted sporadically at best, well outside the requirements of the applicable jail standards (most were well over the 30-minute time-table for "regular" inmate checks) and the last (Plaintiffs doubt and allege that this and/or or any others were inappropriately or improperly performed, with little more than looking at the inmate for a second at best and if at all) being over thirty minutes before Brian was found unresponsive in his cell, apparently due to him hanging himself with the bed sheets not taken from him as a precaution.[2]

15.     At the time, Brian had obviously been deceased for a significant period of time based on the discoloration of his skin, the coolness of his body temperature and the coagulation of blood in his head, neck and more importantly, his hands. Even after being found in such state, the untrained GCSD personnel had no idea what to do, scrambling to find something to cut Brian down, exclaiming repeatedly "what do we do?" and just standing around doing nothing for the motionless Brian.

16.     County (by and through County employee/agents) was aware that during each and every shift of every single day, that the possibility that someone (especially someone who is accused of a serious crime, and exhibiting many and various symptoms of risk) could very well attempt to take their own life. The possibility that such could/would occur is without question and any jail should be training their employees/agents to observe signs of same, how to react to same and properly re-assess before removing someone from such life-saving procedures.[3]

---

[2]  The Texas Commission on Law Enforcement (hereinafter "TCOLE") teaches in its basic jail course that 93% of suicide victims in Texas jails use the hanging method for suicide.

[3]  Such has been a recurring issue in all jails and with County's jail in particular, as there have been several "hanging deaths," including one in 2014 (concerning Abel Vasquez) that was not even reported (by way of a *Custodial Death Report*) as required by the Texas Attorney General.

## IV.
## FIRST CLAIM FOR RELIEF - - §1983 (Against all Defendants)

17.     The Civil Rights Act of 1871 (formerly known as the Ku Klux Klan Act), now codified as 42 U.S.C. §1983 provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. §1983.

18.     The state action requirement for standing under 42 U.S.C. §1983 (hereinafter §1983) has more commonly been referred to as "color of state law" from the statute itself.  Plaintiffs are informed and believe, and thereupon allege that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

19.     §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States.  As such, Plaintiffs allege that Defendants, jointly and/or severally deprived Brian of his Fourteenth Amendment rights and/or Fourth Amendment rights, those rights, privileges, and immunities secured by the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions and/or omissions:

    a)  by acting with deliberate indifference to a substantial and known risk of harm to Brian;

    b)  by failing to intervene, where such intervention would have prevented the death of Brian;

    c)  in creating a danger, which otherwise would not have existed, but for the conduct of

        Defendants, and which made more likely the opportunity of harm to occur to Brian;

    d)   by ignoring Brian's serious medical needs; and

    e)   by failing to impose proper and sufficient policies and/or procedures as to the screening and/or reassessment of inmates/detainees/arrestees in regard to their medical/mental needs and/or training concerning same.

20.     Defendants' actions and/or omissions were not "objectively reasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case illustrates the unreasonableness of Defendants' actions.

21.     It is well-established that counties are liable under §1983 for constitutional torts that are in-compliance and/or in accordance with their customs, practices, policies or procedures. A county is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels.

22.     Defendant County is liable herein because it sanctioned the custom, practice and/or policy or procedures of, *inter alia*, 1) ignoring the serious medical/mental needs of those entrusted to their care based either on expedience or ignorance to the consequences, 2) failing to discipline those persons whom are found to have ignored the medical/mental needs of such individuals, 3) failing to adequately supervise and/or train as to observing their inmates/detainees/arrestees in violation of 37 Tex. Admin. Code §275.1, *et al.*, and/or the TCJS regulations/requirements, 4) failing to provide adequate man power to supervise and/or observe inmates/detainees/arrestees, 5) failing to provide adequate staff to handle situations stemming from the medical/mental needs of inmates/detainees/arrestees, 6) failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical/mental needs, 7) failing to act in compliance with and failing to enforce the policy (of both the Jail and TCJS) requiring

7

visual "checks" and/or suicide checks where necessary and/or warranted, 8) failing to train and/or discipline those employees whom are found to have violated any of the above-noted policies, 9) failing to divert persons/detainees with mental health issues to treatment in violation of the "Sandra Bland Act" and/or other incorporating laws, 10) failing to provide medical or mental health treatment to those in need of same, 11) having a policy of allowing the removal of individuals from suicide watch by personnel other than qualified mental health personnel, as taught/required by TCOLE,  12) having a policy of not monitoring the clothing, bedding or otherwise as it pertains to person at risk for suicide, and 13) failing to maintain any training or policies for personnel to follow once a suicide is detected.

23.     The actions and/or inactions taken in this case were taken pursuant to the customary practices and/or policies or procedures that were sanctioned by Defendant County.  Liability for Defendant County is established under §1983 because its "ignore all policies" attitude is a persistent, widespread practice of the county employees -- namely deputies/officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy. Defendant County had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers. Defendant County's unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. In the alternative, Defendants are liable under §1983 for failing to adopt clear policies outlining the criteria for determining, relaying and/or treating the medical (mental and otherwise) needs of inmates/detainees/arrestees.

24.     Moreover, Defendants are liable for the inadequate training of their deputies/officers under

§1983. Liability attaches to Defendants because their failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact.

## V.
## SECOND CLAIM FOR RELIEF - - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (Against Defendant County)

25.     Brian was an individual with a mental impairment, a record of such an impairment, and regarded as having such impairment within the meaning of 42 U.S.C. §12102. His serious mental illnesses constitute mental impairments that substantially limit him in several major life activities including but not limited to learning, concentrating, thinking, and interacting with others. These limitations on his life activities had a profound effect on Brian fully.

26.     Brian was a qualified individual with a disability as defined in 42 U.S.C. §12102.

27.     Defendant County is a public entity as that term is used in 42 U.S.C. §12131.

28.     Brian was entitled to be free from discrimination under the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq*.

29.     Defendant County failed to accommodate Brian's mental and medical disabilities and denied him the benefits and services of their facilities by reason of his disabilities by, *inter alia*, failing to place Brian in mental health treatment and/or under observation to prevent the suicide at hand.

## VI.
## DAMAGES

30.     As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiffs has been caused to suffer general damages which include, but are not limited to, the following: loss of a father and/or son, both physical and emotional injury, including but not limited to, pain and suffering, and severe emotional and mental distress, and shock, along with severe emotional distress, and loss of support, both emotional and financial.

31.     Said injuries have caused Plaintiffs to incur special damages which include but are not limited to: funeral and burial expenses and the loss of companionship, as well as lost support that Brian would have provided during the remainder of his life.

32.     Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. §1988, a prevailing party in a §1983 case is entitled to recover its attorney's fees. Hence, Plaintiffs further pray for all costs and attorney fees associated with bringing the present case to trial.

33.     In addition, Plaintiffs pray for punitive damages against all individual defendants named herein. Punitive damages are designed to punish and deter persons such as Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under §1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray that upon trial upon the merits, Plaintiffs recover damages against Defendants, jointly and severally; that Plaintiffs also recover punitive damages against the individual Defendants in an amount to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; that this Court issue injunctive relief and/or provide judicial oversight to ensure compliance with Federal and/or State law; and that Plaintiffs recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiffs pray for all pre-judgment and post-judgment interest that can be assessed against the Defendants in the event of recovery; and that Plaintiffs recover against each Defendant any and all other general or specific relief to which they prove themselves justly entitled.

Respectfully submitted,

By: /s/ *Christopher J. Gale*
Christopher J. Gale
Texas Bar No. 00793766
Email: Chris@GaleLawGroup.com
*Attorney-In-Charge for Plaintiffs*
GALE LAW GROUP, PLLC
525 Clifford Street
Corpus Christi, Texas 78404
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Telephone: (361) 808-4444
Telecopier: (361) 232-4139

**Demand for Jury Trial**

Plaintiffs hereby demand trial by jury pursuant to Fed.R.Civ.P. 38(b).